# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## AT DETROIT

| | |
|---|---|
| MARK DOBRONSKI, individually and on behalf of a class of all persons and entities similarly situated, | Case No. 2:25-cv-13806-RJW-EAS |
| Plaintiff | Honorable District Judge Robert J. White |
| v. | Honorable Magistrate Judge Elizabeth A. Stafford |
| MARCHEX, INC., | |
| Defendant. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

II.   INTRODUCTION...................................................................................................1

III.   LEGAL STANDARD ..........................................................................................2

IV.   ARGUMENT........................................................................................................3

  A.   Plaintiff Has Plausibly Pled Marchex's Direct Liability
      for the Subject Calls. ...................................................................................3

     1.   Plaintiff Has Pled Significantly More Than Courts, Including
         This One, Require.................................................................................5

     2.   This Case Is the Very Definition of a "Connect-the-Dots" Pleading
         Courts Find Sufficient. .......................................................................6

     3.   The Allegations Here Closely Track the Allegations This Court Has
         Already Held Sufficient in *Daraujo*..................................................8

     4.   The Cases Marchex Recycles Are Distinguishable on Their Face..........9

     5.   The Court Can Take Judicial Notice of Marchex's Publicly Disclosed
         Business Model...................................................................................12

  B.   Plaintiff Adequately Pleads Residential Use of His Telephone Numbers.......13

  C.   There Is No "Personal Registration" Requirement for the Do Not Call
      Registry. .......................................................................................................17

  D.   There Is a Private Right of Action for 47 C.F.R. § 64.1601(e)......................20

  E.   The Class Claims Should Not Be Struck.........................................................22

V.   CONCLUSION...................................................................................................25

ii

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019)........................................................9

*Abrahamian v. loanDepot.com LLC*,
2024 WL 1092442 (D. Ariz. Mar. 13, 2024) .....................................................19

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................2

*Barton v. Am. Fam. Life Assurance Co. of Columbus*,
2026 WL 25742 (W.D. Wash. Jan. 5, 2026).......................................................20

*Barton v. Bright Solar Marketing LLC*,
2025 WL 2880136 (W.D. Wash. Oct. 9, 2025).....................................................20

*Binetti v. Colo. Tech. U., Inc.*,
2026 WL 812365 (D. Or. Jan. 21, 2026)..............................................................19

*Boyer v. Diversified Consultants, Inc.*,
306 F.R.D. 536 (E.D. Mich. 2015)......................................................................25

*Bradshaw v. CHW Grp., Inc.*,
763 F. Supp. 3d 641 (D.N.J. 2025).......................................................................7

*Bridging Communities Inc. v. Top Flite Fin. Inc.*,
843 F.3d 1119 (6th Cir. 2016)..............................................................................23

*Cacho v. McCarthy & Kelly LLP*,
   739 F. Supp. 3d 195 (S.D.N.Y. 2024)................................................................14

*Callier v. Am.-Amicable Life Ins. Co. of Texas*,
   2022 WL 17732717 (W.D. Tex. Oct. 18, 2022) .....................................................19

*Carr v. Humana Inc.*,
   No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026)........................21

*Connor v. Servicequick Inc.*,
   2025 WL 2855393 (D. Colo. Oct. 8, 2025)...........................................................16

*Consol. Grain & Barge, Inc. v. Anny*,
   2013 WL 486687 (E.D. La. Feb. 6, 2013)................................................................4

*Cunningham v. Rapid Response Monitoring Servs.*,
   251 F. Supp. 3d 1187 (M.D. Tenn. 2017) .............................................................24

*Dobronski v. CHW Grp., Inc.*,
   2025 WL 2426370 (E.D. Mich. Aug. 21, 2025). ........................................ *passim*

*Dobronski v. Daraujo*,
   2025 WL 3908484 (E.D. Mich. Dec. 1, 2025)........................................... *passim*

*Dobronski v. Juliasangel Mktg., LLC*,
   2025 WL 2659265 (E.D. Mich. Sept. 17, 2025) ........................................ *passim*

*Dobronski v. Russo*,
   2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ..................................................5, 9

*Dobronski v. SelectQuote Ins. Servs.*,
   773 F. Supp. 3d 373 (E.D. Mich. 2025) ................................................................20

iv

*Dobronski v. Uppleger*,
   2026 WL 905121 (E.D. Mich. Mar. 31, 2026)......................................................21

*Garrish v. U.A.W. of Am.*,
   149 F. Supp. 2d 326 (E.D. Mich. 2001). .............................................................23

*Hubble v. LoanDepot.Com, LLC*,
   2025 U.S. Dist. LEXIS 186864 (E.D. Mich. Sep. 23, 2025). ..............................23

*Isaacs v. USHealth Advisors, LLC*,
   2025 WL 2268359 (N.D. Ga. Aug. 7, 2025).........................................................14

*Jackson v. Direct Bldg. Supplies LLC*,
   2024 WL 184449  (M.D. Pa. Jan. 17, 2024). ................................................. 14, 15

*McClain v. FirstSource Sols. USA, LLC*,
   No. 3:25-cv-150, ECF No. 41 (W.D. Ky. Mar. 18, 2026). ..................................12

*Moore v. Healthcare Sols. Inc.*,
   2022 WL 17487823 (N.D. Ill. Dec. 7, 2022) ...................................................... 10

*Murch v. GPS Cap. Mkts., LLC*,
   2025 U.S. Dist. LEXIS 169651 (D. Or. June 6, 2025).........................................19

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006)...............................................................................24

*Newell v. JR Cap., LLC*,
   791 F. Supp. 3d 571 (E.D. Pa. 2025)................................................................. 20

*Nichols v. eHealthInsurance Servs., Inc.*,
   2025 WL 689721 (N.D. Cal. Mar. 3, 2025) .........................................................19

*Novia v. Mobiz, Inc.*,
 2026 WL 752181 (D. Mass. Mar. 17, 2026) ................................................ 20, 21

*Outley v. New York*,
 837 F.2d 587 (2d Cir. 1988) ...................................................................24

*Plumbers & Pipefitters Nat. Pension Fund v. Burns*,
 292 F.R.D. 515 (N.D. Ohio 2013)............................................................24

*Prime, Inc. v. Oliveira*,
 586 U.S. 105 (2019). ..........................................................................14

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
 2022 WL 2713278 (N.D. Iowa June 9, 2022).............................................17

*Shelton v. Pro Source Lending Grp. LLC*,
 2025 WL 817485 (E.D. Pa. Mar. 14, 2025). .............................................15

*Smith v. State Farm Mut. Auto. Ins. Co.*,
 30 F. Supp. 3d 765 (N.D. Ill. 2014).........................................................4

*Swierkiewicz v. Sorema N.A.*,
 534 U.S. 506 (2002). ..........................................................................3

*In re Telectronics Pacing Sys., Inc.*,
 172 F.R.D. 271 (S.D. Ohio 1997).............................................................25

*VanderSloot v. Charles Baratta LLC*,
 2025 WL 1898929 (E.D.N.Y. July 9, 2025) ..............................................6

*Weingrad v. DaBella Exteriors, LLC*,
 2026 WL 496609 (D. Or. Feb. 23, 2026)...................................................20

*Wilson v. MedVidi Inc.*,
  2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .......................................................11


**Administrative Materials**

*In re Dish Network*,
  28 F.C.C. Rcd. 6574 (2013). ..............................................................................4


*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  CG Docket No. 02-278, Report and Order, 18 FCC Rcd. (2003) ........................18


**Statutes**

15 U.S.C. § 6151(b). .................................................................................................18
44 U.S.C. § 3501 ......................................................................................................18
47 § 227(c) ..................................................................................... *passim*


**Rules & Regulations**

16 C.F.R. § 310.4(b) ................................................................................................17
47 C.F.R. § 64.1200(c) .............................................................................................17
47 C.F.R. § 64.1601(e) .............................................................................. 2, 20, 21, 25
47 C.F.R. § 64.2305 (d) ...........................................................................................15
FED. R. CIV. P. 8(a) ..................................................................................................2
FED. R. CIV. P. 8(d) .................................................................................................11
FED. R. CIV. P. 12(b) ...............................................................................................2, 3
FED. R. CIV. P. 12 (f) ...............................................................................................3

**Other Authorities**

Wright & Miller, Federal Practice & Procedure § 1380 (3d ed.). ...........................3

## I.      INTRODUCTION

Defendant Marchex, Inc.'s motion repeats arguments its counsel has unsuccessfully advanced before in an attempt to shift their victims' well-pled TCPA claims onto someone else. This Court has already rejected a substantively identical motion in *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *1 (E.D. Mich. Aug. 21, 2025). It should do so again.

Marchex's motion fails out of the gate because of a fact that distinguishes this case from practically every other TCPA pleading case Defendant cites. In this case, a third party has already identified Marchex as the entity from which it received the transfer of the call allegedly placed to Plaintiff. Plaintiff first sued State Farm for the calls. State Farm identified Marchex as the source of the call transfer and the lead. Plaintiff was transferred *on the call* to State Farm, and State Farm was thus in the best position to know from where it received the transfer. That is not a pleading built on supposition. It is a pleading built on the identification of the telemarketer's own downstream customer.

Plaintiff's allegations are not only plausible, but they are also a plain case for liability. This Court can also take judicial notice of Marchex's 10-K filing, which advertises that it is a provider of AI-powered marketing technology, precisely as in the prerecorded calls alleged to have occurred in the Complaint. A third party has pointed the finger at Marchex. Marchex's own business model aligns with the calls

1

as pled. Plaintiff was transferred to State Farm, and State Farm identified Marchex as the source of the calls. The inference of liability is not merely plausible. It is an eminently logical one.

Defendant's remaining arguments, that Plaintiff has not adequately pled residential use, that there is some sort of personal registration requirement under the TCPA, that Section 64.1601(e) has no private right of action, and that the class allegations should be stricken, have all been rejected, some repeatedly, by this Court and others. They are no better here. The motion ought to be denied.

## II.    LEGAL STANDARD

Under Rule 12(b)(6) a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8 (a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

2

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. FED. R. CIV. P. 12(f). However, the 12(f) device is used rarely and is particularly disfavored, applying, by its very definition, to "redundant, immaterial, impertinent, or scandalous matter." Motions to strike are often sought "simply as a dilatory or harassing tactic." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed).

### III.   ARGUMENT

#### A. Plaintiff Has Plausibly Pled Marchex's Direct Liability for the Subject Calls.

The Court's analysis must begin and end with whether Plaintiff has plausibly alleged Marchex's involvement in the calls with sufficient specificity to give rise to the inference of direct liability. He has done so. In essence, Marchex adopts the classic "we didn't do it" defense by disguising it as a challenge to Plaintiff's allegations. But Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). However, that's precisely what Defendant attempts to do here, making a red herring argument that Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that Defendant

3

placed the calls at issue. But that's a "red herring" that begs the question: "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at \*6 (E.D. La. Feb. 6, 2013). Nevertheless, Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that Marchex placed the illegal calls at issue here.

Direct TCPA liability attaches to an entity that "initiates" the call, that is, the entity that either takes the necessary steps to physically place it or is "so involved in" the placement that it essentially made the call itself. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014). A caller can also initiate the call "through another." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6594 n.81 (2013). Indeed, the TCPA provision imposes liability for calls initiated "by or on behalf of" an entity, 47 U.S.C. § 227(c)(5), which expressly contemplates liability without the defendant itself placing the call. Marchex's insistence that Plaintiff must plead that it "physically" dialed the phone reads that phrase out of the statute and cannot be squared with Congress's chosen language. But even so, as the Amended Complaint's allegations make clear, Plaintiff has pled more than adequate facts to allow this Court to determine that Defendant directly placed the calls complained of at the pleadings stage.

### 1. Plaintiff Has Pled Significantly More Than Courts, Including This One, Require.

Unlike the pleadings in *Dobronski v. Russo*, No. 2:23-CV-12288, 2024 WL 4363118 (E.D. Mich. Sept. 30, 2024), and *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265 (E.D. Mich. Sept. 17, 2025), two cases Defendant leans on heavily, Plaintiff here has alleged a tight and corroborated chain of facts tying Marchex to the calls. The Amended Complaint alleges that Plaintiff received the subject calls to his residential telephone number and that he was transferred to State Farm. Plaintiff then sued State Farm for the same calls, and State Farm identified *Marchex* as the entity that both placed the transfer and supplied the lead to State Farm. Plaintiff then amended to name Marchex as the correct entity. Marchex's publicly disclosed business model is precisely that, providing AI marketing solutions for its customers and transferring leads to its paying clients, like State Farm.

That is fact pleading grounded in the identification of Marchex by a downstream third party, corroborated by Marchex's own publicly disclosed business model. In denying the motion in *CHW*, the Court explained:

> Plaintiff does allege a supporting fact: that in all calls aside from Call 5, the callers identified themselves as "with" or "from" Choice Home Warranty. Defendant qualifies this fact as insufficient, citing non-binding cases where courts found a telemarketer's indication of "association with" an entity during a call with a plaintiff insufficient to show that the entity actually made the call. Defendant also faults Plaintiff for not providing enough factual matter to establish that the calls came from a number belonging to

5

Defendant. . . . This Court finds that Plaintiff alleges sufficient facts to plausibly claim Defendant's liability for the subject calls. . . . If a caller's self-identification cannot be taken as an indication of their identity at the pleading stage, a nigh insurmountable barrier would be erected against recovery for consumers under the TCPA. Facts alleged in a complaint need not be detailed, and a plaintiff need not prove his case at this stage. . . . Indeed, some facts, such as Defendant's control over the phone numbers used to call Plaintiff, may be revealed only through discovery. Requiring plaintiffs to plead such facts initially would impede the right to recovery under the TCPA.

2025 WL 2426370, at *3-*4. This Court should apply the same reasoning as Judge Parker did. The only material difference between *CHW* and this case is that the pleading here is even *stronger*. Plaintiff relies not merely on the callers' self-identification, but on a *third party's identification* of Marchex as the entity that transferred the calls to it, together with Marchex's business model. That is the factual enhancement that was missing from the cases Marchex cites.

### 2. This Case Is the Very Definition of a "Connect-the-Dots" Pleading Courts Find Sufficient.

These are precisely the kind of connect-the-dots pleading allegations that courts find sufficient to infer direct liability at the pleading stage. In *VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 1898929, at *2 (E.D.N.Y. July 9, 2025), the Court considered a similar motion in which the defendant claimed that the plaintiff insufficiently connected "at least 69 calls" to the defendant, based on a complicated web of connections that the court used a chart to decipher, including the use of multiple telephone numbers and, ultimately, an email

6

from an individual using the defendant's domain. *Id.* The court held that the plaintiff had sufficiently "connect[ed] the dots." *Id.* at \*6. In so holding, the court pointed to record evidence connecting the calls at issue and the entities that placed them to the defendants, which "effectively connect[ed] the dots between the phone numbers and 'fictitious' individuals and how they trace back to Defendant." *Id.* at \*8. So, too, here.

As another court has explained, Plaintiff is entitled to take State Farm at its word that the source of the calls was Marchex:

> After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is. So too as to the December 8 call. The caller allegedly introduced herself as "Erica ... from [the Defendant]." Why then would it not be plausible to conclude that she was, in fact, "Erica ... from [the Defendant]"? The logic of this approach is reflected in the decisions of any number of federal courts. (citing cases)

*Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 646 (D.N.J. 2025). The same logic applies with even greater force where, as here, the identification of Marchex comes not from the caller itself but from a *third party*, State Farm.

And, as this Court explained in *CHW*, some of the information Defendant faults Plaintiff for not pleading, such as the ownership of the *spoofed* caller ID numbers or any potential call centers and telephone providers it hired to place the calls, are, quite literally, "systematically to be in the sole possession of defendants." 2025 WL 2426370, at \*4. A telemarketer whose product is anonymity *by design*

7

cannot hide behind its own obscurity and dishonesty to defeat pleadings. To the extent that Marchex contends it did not place the calls, it would still be liable under an alternative theory, which it is uniquely in a position to address, as only it possesses any alternative evidence. A plaintiff is required to plead facts giving rise to the plausible inference of direct liability. That has been done here.

### 3. The Allegations Here Closely Track the Allegations This Court Has Already Held Sufficient in Daraujo.

This case is also strikingly similar to, and, if anything, stronger than, the allegations this Court recently held sufficient in *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484 (E.D. Mich. Dec. 1, 2025). In *Daraujo*, this Court denied motions to dismiss a TCPA action predicated on a "canary trap" in which the same Plaintiff here received calls from telemarketers selling insurance, gave a unique fake name, and tied the calls to the defendants through their subsequent use of the fake "canary" name. *Id.* at *2-*3, *6. The Court held that "examining even just the first two calls, Dobronski has a cause of action against Defendants" because the follow-up conduct naming the canary trap name and identifying Daraujo as the producing agent was sufficient to tie the calls to the defendants. *Id.* at *10.

The parallel to this case is direct. Just as in *Daraujo*, Plaintiff feigned interest in the illegal calls and was transferred to State Farm during the call. State Farm then identified Marchex as the source of Plaintiff's lead and call transfer, and the calls alleged in the Complaint all bear the same indicia, including the same AI robot,

"Zach Miller." Here, the "canary trap" is the transfer to State Farm itself. Marchex's calls to Plaintiff resulted in a transfer to State Farm, and State Farm's records identified Marchex as the source of the transfer and the lead. Just as the email in *Daraujo* effectively tied the dots, so too does the identification of Marchex here. If anything, the linkage here is *stronger*, because the downstream identification comes from an independent third party.

### 4. The Cases Marchex Recycles Are Distinguishable on Their Face.

In distinguishing the litany of string citations cited by the same defense counsel in *CHW*, most of which Marchex recites here, Judge Parker remarked:

> Defendant cites many out-of-circuit cases in an attempt to thread this argument. But the cases Defendant cites are distinguishable. For example, in *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019), the complaint was devoid of facts such as "how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiff's phone." Here, Plaintiff alleged details of each call, including the caller's self-identification, the substance, and other details such as click sounds and the amount of delay before a live person answered each call.

*CHW Grp., Inc.*, 2025 WL 2426370, at n.1.

And neither *Russo* nor *Juliasangel* help Marchex, either. In *Russo*, the plaintiff conceded that he "d[id] not know the identity of the telemarketers who initiated the Subject Calls." 2024 WL 4363118, at *5. In addition, there, the Court was forced to distinguish between the specific conduct attributable to each of the 13 named defendants, each with differing involvement. *See id.* None of that is true here.

9

Here, there is one defendant, Marchex, there is no need to distinguish disparate conduct, and Marchex is alleged to be the entity that placed the calls at issue, as identified by State Farm.

*Juliasangel* is even less helpful. There, the plaintiff "received eleven phone calls" but "[o]nly the eleventh [appeared] connected to moving Defendants." 2025 WL 2659265, at *2. Moreover, the complaint made "generalized and conclusory allegations" of a "concert of action" that failed "to state what exactly Juliasangel did." *Id.* at *8. The plaintiff lost not because he couldn't tie the calls to Juliasangel (indeed, the Court seems to have credited the fact that the plaintiff pled one), but because he failed to plead more than one call from Juliasangel as the statute requires for a Section 227(c) claim. Here, Plaintiff pleads at least two calls with the *same AI script*, which was transferred to State Farm, and which State Farm fingered Marchex as the source of the transfer. Given these indicia, it's exceedingly unlikely that some other party uses the same AI script as Defendant. *See Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely."). Plaintiff's allegations against Marchex are of a totally different kind than those that failed against Juliasangel.

Defendant's reliance on *MedVidi* is a perfect illustration of why its motion should fail. Defendant quotes *MedVidi* for the proposition that "[t]here is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent." *Wilson v. MedVidi Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025). But the Amended Complaint *literally pleads* the investigation that the *MedVidi* court found lacking.

Relatedly, Marchex's suggestion that the spoofed caller IDs sever the chain of traceability is both legally wrong and logically suspect. Plaintiff cannot be expected to plead that the caller ID transmitted "Marchex" when Marchex *spoofed* the caller ID, which is itself an independent TCPA violation for which Plaintiff sues. This Court already rejected a similar argument in *CHW*, reasoning that such information would be in Marchex's possession, particularly given its involvement in the transfer process as State Farm has indicated. 2025 WL 2426370, at *4. State Farm *did* the investigation, identified that Marchex transferred the call to State Farm, and so Plaintiff sued Marchex. That is the factual enhancement that was missing in Defendant's own authorities and confirms the pleading's adequacy here.

Defendant also attempts to fault Plaintiff for purportedly pleading direct liability "in the alternative." That argument fails too. Pleading in the alternative is expressly permitted by the Federal Rules. FED. R. CIV. P. 8(d)(2), (3). And the

11

Western District of Kentucky recently rejected *the very same argument* in *McClain v. FirstSource Sols. USA, LLC*, No. 3:25-cv-150, ECF No. 41, (W.D. Ky. Mar. 18, 2026). Defendant, represented by the same counsel here, made the same argument that the plaintiff's pleadings were contradictory because they used "either/or" language. The Court rejected this argument and held that the language was best understood as pleading alternative theories, which was permissible. *Id.* at 5.

### 5. The Court Can Take Judicial Notice of Marchex's Publicly Disclosed Business Model.

Finally, even setting aside State Farm's identification, this Court can take judicial notice of Marchex's publicly disclosed business model. Marchex is a publicly traded entity whose own 10-K states:

> Marchex harnesses the power of artificial intelligence ("AI") and conversation intelligence to provide actionable insights derived from prescriptive vertical market data analytics. Marchex enables organizations across business functions to optimize customer acquisitions and experiences, transforming conversations into meaningful business outcomes. Marchex provides AI-powered conversation intelligence solutions for market-leading companies in leading business-to-business-to-consumer ("B2B2C") vertical markets, including many of the world's most innovative and successful brands. . . . We seek to empower performance improvements for our customers by giving them actionable, real-time insights into the conversations they are having with their customers across *phone*, text, and other communication channels. We have assembled a set of applications that incorporate AI functionality for enterprises that depend on phone calls, texts, and other communication channels to help convert prospects into customers, enabling compelling customer experiences during the sales process and helping maximize returns.

Marchex, Inc., Annual Report (Form 10-K) (Mar. 26, 2026). That Marchex is involved in the placing of the *precise* type of calls alleged in the Complaint is not a

12

matter of speculation but of Marchex's own public representations in an annual report made under the penalties and purview of the Securities Exchange Act of 1934. At this stage, it is perfectly proper for the Court to draw the reasonable inference that the calls described in the Amended Complaint, AI marketing calls transferred to State Farm, were placed by Marchex in the ordinary course of Marchex's disclosed business. Here, Plaintiff has pled facts *plus* a third-party's identification *plus* Marchex's business model. That is enough at the pleading stage.

### B. Plaintiff Adequately Pleads Residential Use of His Telephone Numbers.

Plaintiff has pled that he received the subject calls on two numbers, his "cellular telephone number" and his "home telephone number," Compl. ¶ 26, 27. Moreover, he has pled that he uses "his cellular telephone number for personal, residential, and household purposes. Plaintiff's cellular telephone number is not associated with a business, nor does Plaintiff use the number for business purposes" and that he "uses his home telephone number for personal, residential, and household purposes. Plaintiff's home telephone number is not associated with a business, nor does Plaintiff use the number for business purposes." Compl. ¶¶ 30, 31. He is therefore a residential subscriber because Plaintiff has pled precisely what is necessary for a holding that his number is residential. Again, Defendant commits an error of statutory construction.

13

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). To see why, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion. A "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So a person can be a "telephone subscriber" to any telephone service. *Id.* That leaves the word "residential." As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So the word "residential" refers to the purposes for which a phone is used, not its physical characteristics or location. *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024).

*Jackson's* textualist analysis is particularly illustrative. There, the Court held that calls to cell phones are calls to residential numbers simply because, as a matter of good statutory construction, the word "residential" and "telephone" are both adjectives that modify "subscriber," and describe the type of subscribers protected,

14

"residential" ones, regardless of the technologies they choose to use. *Jackson*, 2024 WL 184449, at *5. This conclusion finds support in FCC regulations that explicitly define "residential subscriber" to mean "a subscriber … *that is not a business subscriber*." 47 C.F.R. § 64.2305 (d) (emphasis added); *see* 14 F.C.C. Rcd. 15550, 15692 (1999). Nothing in the text shows Congress intended to couch recovery on the presence of a physical wire. Since Plaintiff has pled the "residential" uses of the number, he is a "residential" subscriber. Plaintiff has pled exactly what is required under the statute to plead residential use.

Defendant's authorities, *Worsham* and *Target Advance*, do not mandate a different result. They stand only for the unremarkable proposition that a business telephone number is ineligible for registration on the Do Not Call Registry at the time it is actively used as a business number. In *Target Advance*, the court's holding was limited to whether, *during the time of the calls*, the plaintiff's telephone number was eligible for registration on the National Do Not Call Registry. The same Court that decided *Target Advance* later decided that the plaintiff regained standing when he returned the same number to residential use. *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025). To the extent Defendant argues that Plaintiff's prior use of the number for any alleged business purpose forever strips him of TCPA protection, that argument has been squarely rejected. *Id.* ("Defendants point to no legal authority supporting a

conclusion that past commercial use of a number permanently eliminates standing where the number continues to be listed on the NDNC. Conceptually, there is a temporal aspect to standing, as illustrated by the fact that in some cases standing is deemed not to exist because the injury alleged is hypothetical, and in other instances a case allowed to proceed is later dismissed as circumstances change.").

Even if, *arguendo*, Plaintiff's number(s) were once business number(s) at some point, *at all times relevant here*, Plaintiff has pled and maintains that the number has been used for personal, family, and household purposes. That is all that the statute and regulations require. *Connor v. Servicequick Inc.*, No. 1:24-CV-02286-CNS-NRN, 2025 WL 2855393, at *2 (D. Colo. Oct. 8, 2025) ("Alleging that Plaintiff's phone number, which is listed "on the DNC" registry, "is not associated with a business and is used for personal purposes," is sufficient to establish that Plaintiff is a "residential telephone subscriber," and not a business, under the TCPA."). *Mantha*'s "primary means" *dicta* has not been adopted by any other court and was determined on a full record, not at the pleadings stage. Moreover, the calls at issue here were not business calls such as would support an inference that the number is used for business. They were calls soliciting Plaintiff for State Farm's personal insurance products. Plaintiff has pled residential use, and Defendant's contrary assertion is a fact question at best, inappropriate for resolution on a motion to dismiss.

### C. There Is No "Personal Registration" Requirement for the Do Not Call Registry.

To the extent Defendant argues that Plaintiff's DNC-based claims fail because Plaintiff allegedly did not "personally" register the number on the Registry, that argument is wrong as a matter of law. Reading 47 C.F.R. § 64.1200(c)(2) to require personal registration for each new subscriber cannot be reconciled with the requirement that registrations "must be honored indefinitely," or with the reality that the Registry stores only numbers, not names. Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), Defendant misstates the applicable law. To see why, start with what the Do Not Call Registry protects: *telephone numbers*; not specific persons. 16 C.F.R. § 310.4(b)(1)(iii)(B). ("*That person's telephone number* is on the "do-not-call" registry, maintained by the Commission . . ."). The regulation makes clear that the only requirement for proving a violation of the FTC Telemarketing Sales Rule: that the "person's telephone number" be on the DNCR. It says *nothing* about who must have placed it there or even that the subscriber must have placed it there at all.

Relatedly, the FCC's Do Not Call regulations under the TCPA, under which Plaintiff sues here, permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be *honored indefinitely*, or until the registration is cancelled by the consumer or the telephone number is

17

removed by the database administrator." *Id.* Significantly for *Loper Bright* purposes, Congress explicitly *ratified* the language the Federal Trade Commission promulgated when the FTC outlined what the DNC Registry protects: "telephone numbers" that are "on the [DNCR]", full stop, and without reference to who registered the number. 15 U.S.C. § 6151(b). As such, Plaintiff clearly has standing because he received a telemarketing call while his telephone number was on the Registry, just as required under the FTC and FCC Regulations.

The Registry is a registry of *telephone numbers*, not names, and protects those *telephone numbers*. For that matter, such a requirement would also run afoul of the order creating the Do Not Call Registry, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added).

Moreover, the Paperwork Reduction Act of 1995, 44 U.S.C. § 3501, applies to the collection of an individual's phone number for inclusion on the Do Not Call Registry. And the FCC's and FTC's Paperwork Reduction Act notices for registration on the Do Not Call Registry *do not permit the collection of personally identifiable information* so as to establish whether an individual personally

18

registered their number on the Registry. *See generally OMB Control Nos.* 3060-0519 and 3084-0169. Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy, the very aim that the Registry is designed to protect. Thus, as an initial matter, the government is *not even authorized* to collect the information Defendant claims Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

In any event, *Rombough* has been rejected by a multitude of courts, identifying various issues with its flawed reasoning. *See, e.g.*, *Murch v. GPS Cap. Mkts., LLC*, 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025); *Abrahamian v. loanDepot.com LLC*, No. 2:23-cv-00728, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024); *Nichols v. eHealthInsurance Servs., Inc.*, No. 23-CV-06720-EKL, 2025 WL 689721, at *3 (N.D. Cal. Mar. 3, 2025); *Binetti v. Colo. Tech. U., Inc.*, No. 6:25-CV-01049-AP, 2026 WL 812365, at *5 (D. Or. Jan. 21, 2026); *Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5-*6 ("*Rombough's* nitpicky formality is thoroughly unpersuasive.") (W.D. Tex. Oct. 18, 2022). This Court should reject Defendant's invitation to import an atextual personal registration requirement that appears nowhere in the statute and would eviscerate its protections. This is no basis to grant the motion to dismiss, either.

19

**D. There Is a Private Right of Action for 47 C.F.R. § 64.1601(e).**

Defendant's argument that 47 C.F.R. § 64.1601(e) does not confer a private right of action has been rejected by this Court multiple times and every other district court to have considered the issue after this Court decided *Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) ("*SelectQuote II*"). *SelectQuote II* represents the most comprehensive analysis of Section 1601(e) undertaken by any court to date, and it happens to have been conducted by Judge Murphy of this Court. In *SelectQuote II*, Judge Murphy thoughtfully analyzed and explained the promulgative authority for the private right of action under Section 64.1601(e) as arising under Section 227(c) of the TCPA.

Since *SelectQuote II*, *every single court* to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof, including Judges Parker and Berg of this Court. *E.g.*, *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025); *CHW Grp., Inc.*, 2025 WL 2426370, at *7; *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025); *Daraujo*, 2025 WL 3908484, at *8; *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742, at *5 (W.D. Wash. Jan. 5, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *7 (D. Mass. Mar. 18, 2026); *Novia v. Mobiz,*

*Inc.*, No. 25-CV-11036-AK, 2026 WL 752181, at \*4 (D. Mass. Mar. 17, 2026); *Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026); *Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at \*10 (E.D. Mich. Mar. 31, 2026).

This Court should continue that long line of cases holding that there is a private right of action and reject the faulty line of reasoning proffered by Defendant, which is premised on the very same reasoning underlying the *Worsham* and pre-*SelectQuote II* authorities addressed by this Court. Applying the reasoning of *SelectQuote II* and its progeny, it is clear that Section 64.1601(e) was promulgated under § 227(c), and that a private right of action exists to enforce it. Working through the possible statutory bases for the subject regulation systematically, only § 227(c) fits. Defendant invokes the same faulty *Worsham* and related line of reasoning that the *SelectQuote II* Court already addressed and rejected. Since *SelectQuote II*, no court has adopted that faulty reasoning. All the pre-*SelectQuote II* decisions impermissibly severed the subject regulation, promulgated under § 227(c), from the § 227(c)(5) private right of action Congress provided. That position cannot be reconciled with the litany of post-*SelectQuote II* decisions. If the regulation was promulgated under § 227(c), as it must have been, then it is enforceable through § 227(c)(5). The tide has shifted definitively. This Court should continue to follow

21

*SelectQuote II*, as every other judge of this Court to consider the issue has done, rather than Defendant's outlier authorities.

### E. The Class Claims Should Not Be Struck.

Defendant fundamentally misapprehends the questions the Court is called upon to ask as legal ones that will affirmatively grant or deny class membership. But at this stage, Plaintiff pleads the existence of uniform questions that will make certification appropriate. In essence, Defendant's bid to strike the class allegations at the pleadings stage not only asks this Court to prejudge Plaintiff's adequacy before class certification has occurred, but also to determine that Plaintiff's adequacy will not be answered affirmatively in Plaintiff's favor at a jury trial, which is not even the appropriate standard on class certification. Class members (including Mr. Dobronski), have claims in a class action, and a class should be certified, if a uniform question is apt to drive the resolution of the litigation, not because the class will eventually be decided, on the merits, for or against the proposed class. The class certification analysis "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). That is what Marchex does here, repackaging merits arguments in motion to strike clothing. Indeed, Judge Ludington held late last year:

> it is not impossible to certify a TCPA class with a definition that does
> not expressly exclude telecommunication recipients who "solicited or

consented to receiving the challenged" communications. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1123-26 (6th Cir. 2016). Indeed, discovery could reveal "a class-wide absence of consent," *id.* at 1125, which would ultimately moot Defendant's consent concerns. In other words, further "factual development" could alter the certification analysis, which counsels heavily against striking Plaintiff's class allegations at the pleading stage.

*Hubble v. LoanDepot.Com, LLC*, 2025 U.S. Dist. LEXIS 186864, *8-9 (E.D. Mich. Sep. 23, 2025). This Court should hold the same.

The class definitions here are similar to classes other Sixth Circuit courts have certified. Nor should the Court question Mr. Dobronski's adequacy at the pleadings stage. Notably, no Court has held Mr. Dobronski to be inadequate. To determine adequacy, the court considers if the named plaintiffs and their counsel have any conflicts of interest with other class members and if the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Garrish v. U.A.W. of Am.*, 149 F. Supp. 2d 326, 332 (E.D. Mich. 2001). Marchex points to no evidence at the pleadings stage that Plaintiff has any conflict of interest with the class nor any reason why he would not prosecute the action vigorously on behalf of the class, and Mr. Dobronski vehemently denies the same, particularly when he is represented by counsel here. Indeed, for example, Defendant selectively quotes *Daraujo* for the proposition that Plaintiff's "canary-trap" whereby he was able to identify the defendant was somehow improper, when the Court actually *credited* this conduct in

23

holding that the plaintiff stated a claim. 2025 WL 3908484, at *2-*3. It also expressly held that Dobronski *had Article III standing*, despite his alleged litigation history, and noting that such analysis was between conducted "after discovery has been completed." *Id.* at *6-*7. What's more, *Pilgrim*, cited by Marchex, struck allegations on superiority and predominance grounds, not adequacy, on a developed record, and is therefore distinguishable.

The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny. *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). Filing multiple TCPA lawsuits does not create a conflict with the class. "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. . . . The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders.") (Easterbook, J.). Alleged credibility problems, *Plumbers & Pipefitters Nat. Pension Fund v. Burns*, 292 F.R.D. 515, 521 (N.D. Ohio 2013), or the strength of the claims, *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271,

24

282 (S.D. Ohio 1997), are insufficient to establish inadequacy for class certification purposes.

Defendant also seeks the wrong remedy. "[W]hen impermissible class allegations are stricken at this early stage in the litigation, plaintiffs should be given leave to amend their complaint to proceed." *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015). Even if Plaintiff is inadequate (he is not), the right remedy is to rectify through amendment or address adequacy through Rule 23's process, not a motion to strike.

## IV.   CONCLUSION

Defendant's motion is replete with arguments that have been rejected repeatedly by this Court and others. On the key issue of liability, this case is not only materially indistinguishable from *CHW Group* and *Daraujo*—it is stronger. Defendant's other arguments concerning residential use, personal registration, Section 64.1601(e), and the class definition fare no better. This Court should deny the motion in its entirety or, alternatively, permit leave to amend.

*[Counsel signatures to follow on next page.]*

RESPECTFULLY SUBMITTED this 23rd day of April, 2026.

/s/ *Cassandra P. Miller*
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave.
Suite 1610
Chicago, IL 60611
Telephone: 872-263-1100
Fax: 872-263-1109
cmiller@straussborrelli.com

/s/ *Andrew R. Perrong*
Andrew Roman Perrong
**PERRONG LAW LLC**
2657 Mt. Carmel Ave
Glenside, PA 19038
Telephone: 215-225-5529
Fax: 888-329-0305
a@perronglaw.com

George T. Blackmore
31800 Northwestern Hwy, Suite 350
Farmington Hills, MI 48334
Telephone: 888-789-1715
gblackmore@provenresource.com

*Counsel for Plaintiff
and the Putative Class*

26

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller hereby certify that on April 23, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 23rd day of April, 2026.

Respectfully submitted,

*/s/ Cassandra P. Miller*
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave.
Suite 1610
Chicago, IL 60611
Telephone: 872-263-1100
Fax: 872-263-1109
cmiller@straussborrelli.com

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
AT DETROIT**

| | |
|---|---|
| MARK DOBRONSKI, individually and on behalf of a class of all persons and entities similarly situated, | Case No. 2:25-cv-13806-RJW-EAS |
| Plaintiff | Honorable District Judge Robert J. White |
| v. | Honorable Magistrate Judge Elizabeth A. Stafford |
| MARCHEX, INC., | |
| Defendant. | |

**BRIEF FORMAT CERTIFICATION FORM**

I, Cassandra P. Miller,  certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

[  ] the brief contains a statement regarding concurrence, see LR 7.1(a)

·   <u>LR 7.1(a) not applicable to response brief;</u>

[x]  the brief, including footnotes, uses 14-point font, see LR 5.1(a)(3);

[x]  the brief contains minimal footnotes and, in all events, no more than 10, see Case Management Requirements § III.A;

28

[x]  the brief and all exhibits are filed in searchable PDF format, see Case Management Requirements § III.A;

[x]  except for footnotes and necessary block quotes, the brief is double spaced (not "Exactly 28 pt" spaced) with one-inch margins, see LR 5.1(a)(2);

[x]   deposition transcripts have been produced in their entirety (not in minuscript), see Case Management Requirements § III.A;

[x]  if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, see Case Management Requirements § III.B

DATED this 23rd day of April, 2026.

Respectfully submitted,

*/s/ Cassandra P. Miller*
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave.
Suite 1610
Chicago, IL 60611
Telephone: 872-263-1100
Fax: 872-263-1109
cmiller@straussborrelli.com

29